UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 19-cr-01788-BAS-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO REDUCE SENTENCE (ECF No. 37)** |
| ANTHONY GIOVANNI AUTRY, | |
| Defendant. | |

On March 4, 2022, this Court sentenced Mr. Autry to seventy-seven months in custody. (ECF No. 35.) Mr. Autry has served approximately thirty-eight months of that sentence, and according to the Government is eligible for transfer to a Residential Reentry Center by May 5, 2024. Mr. Autry has now filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i)—Compassionate Release. (ECF No. 37 ("Motion").) The Government opposes (ECF No. 42 ("Response")), and Defendant replies (ECF No. 43 ("Reply")). For the reasons stated below, this Court **DENIES** Mr. Autry's Motion.

**I.    BACKGROUND**

As part of a federal investigation into a poly-drug distribution and money laundering network, Mr. Autry was arrested for distribution of methamphetamine after he sold 52.7 grams of methamphetamine to undercover agents. (Presentence Report, ECF No. 27 ("PSR").) At the time of his arrest, he was homeless and had numerous prior convictions

for domestic violence, felony possession of methamphetamine, and various theft offenses. (PSR ¶¶ 9, 23–34.)  Most recently, in 2018, Mr. Autry was convicted of felony transportation of methamphetamine, felony car theft, hit and run, and evading a police officer. (*Id.*)  The Probation Department calculated his criminal points at 23 and his criminal history category as a VI. (*Id.*)  Mr. Autry admitted he had a serious methamphetamine addiction. (PSR ¶ 59.)

Before Mr. Autry was incarcerated, he had teeth extracted and five implants installed. (Motion, Exh. C.)  An acrylic maxillary denture was attached as a temporary prosthesis while the bone healed and implants were integrated in the bone. (*Id.*)  Mr. Autry did not have problems with the denture until after he arrived at FCI Sheridan in December 2020. (Motion, Exh. A.)  However, soon after arriving at FCI Sheridan, the implant appliance cracked. (*Id.*)  By early January, Mr. Autry had alerted the medical staff at FCI Sheridan to this problem. (Motion, Exh. C.)  On February 17, 2021, Mr. Autry was seen by Dr. Kim who was able to remove the remaining portion of the denture.  At that point, Mr. Autry told the doctor that the prosthesis "does not seem to bother him." (*Id.*)  He was requesting, however, a way to re-attach a new prosthesis. (*Id.*)

On March 3, 2021, Dr. Kim saw Mr. Autry again.  At that time, Mr. Autry "was able to re-attach the left 2/3 of the prosthesis with the original screws . . . . It appeared to be very firmly in place with no mobility."  However, a screw on the right side was still sticking out. (*Id.*)

On November 4, 2021, Mr. Autry was seen at a dental clinic.  He was given two choices of treatment.  Notes indicate "[i]nmate will decide between these two choices and let us know." (Motion, Exh. C.)  On January 4, 2022, Mr. Autry sent a note indicating that "the second option (the refabrication of [the] existing [implant]) would be in [his] best interest." (*Id.*)  He asked for an update on when an implant specialist would be available, indicating "I have been experiencing pain in my jaw and gums . . . I constantly worry and take every bit of food with extreme caution." (*Id.*)  He received a response that "we will schedule you for an evaluation as soon as we can." (*Id.*)

On February 2, 2022, Mr. Autry was again seen by the dental clinic, at which time the target date to "evaluate and fabricat[e] existing type of transitional implant overdenture" was May 31, 2022. (Motion, Exh. C.) On March 16, 2022, Mr. Autry was seen by dentist Dr. Bowyer who indicated Mr. Autry needed a referral to a prosthodontist "because his case was beyond my scope of practice." (*Id.*) In response to a follow-up inquiry from Mr. Autry, on May 11, 2022, FCI Sheridan indicated "we are doing our best to find a prosthodontist who can take your case." (*Id.*) The Government indicates in its response that "[t]he current target date for [Mr. Autry] to see the outside prosthodontist is on or before August 31, 2022."

Records show Defendant has exhausted his administrative remedies by applying for compassionate release from the Warden at FCI Sheridan, where he is being housed, without response. (Motion, Exh. D.) More than 30 days have elapsed since this request was made. *See* 18 U.S.C. §3582(c)(1)(A)(i) (providing the court may consider a defendant's motion for compassionate release if he requests release from the warden of his facility and receives no response within 30 days).

## II.   ANALYSIS

Once a defendant exhausts his administrative remedies, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

Unfortunately, Congress provided no statutory definition of "extraordinary and compelling reasons" and instead delegated that responsibility to the U.S Sentencing Commission. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021). Due to vacancies in the Sentencing Commission, the Commission has been unable to update its definition of "extraordinary and compelling reasons" following passage of the First Step

1  Act that amended § 3582(c)(1)(A). *Id.* Nonetheless, the Sentencing Commission's original
2  policy statements, although not binding, may inform the district court's decision as to
3  whether certain conditions are extraordinary and compelling. *Id.*

4        In the Application Notes, the Sentencing Commission gives examples of
5  extraordinary and compelling reasons, including where "[t]he defendant is suffering from
6  a serious physical or medical condition . . . that substantially diminishes the ability of the
7  defendant to provide self-care within the environment of a correctional facility and from
8  which he . . . is not expected to recover."  U.S.S.G. § 1B1.13(1)(A)(ii), Application Note
9  1(A)(ii) (last revised Nov. 1, 2021).

10        The Court agrees that, post-*Aruda*, "district courts are empowered to consider any
11  extraordinary and compelling reason for release . . . even if not enumerated by the
12  Sentencing Commission's statements." *United States v. Wright*, No. 19-cr-4286-GPC,
13  2022 WL 673265, at *3 (S.D. Cal. Mar. 7, 2022).  "The Court may therefore consider
14  Section 1B1.13 in its broad exercise of discretion, but it is not bound by its definition of
15  extraordinary and compelling reasons." *Id.*

16        Although the Court is sympathetic to Mr. Autry's struggles with his dental
17  prosthesis, the delays in care do not rise to the level of extraordinary and compelling
18  reasons for release. *Cf. United States v. Waxman*, No. CR18-175RSL, 2021 WL 4148180,
19  at *6 (W.D. Wash. Sept. 13, 2021) (finding dental conditions, including delays in receiving
20  treatment resulting in pain, did not constitute extraordinary and compelling circumstances
21  where COVID-19 pandemic has impacted speed of treatment and defendant's complaints
22  appear to have been addressed); *United States v. Gentry*, No. 3:08-cr-00140-JO, 2021 WL
23  4499035, at *1 (D. Or. Oct. 1, 2021) (reasoning although defendant's untreated dental
24  conditions cause pain, prison is aware of his dental condition, and he is scheduled for x-
25  rays, evaluation, and probable extraction of his broken tooth).  Similar to the defendant in
26  *Gentry*, FCI Sheridan appears to be aware of Mr. Autry's condition and is searching for a
27  prosthodontist who will treat Mr. Autry.  The Court is dismayed by the delays in treatment
28

and certainly hopes the projected date of no later than August 31st is accurate, but ultimately, the dental condition is one from which Mr. Autry is expected to recover.

Additionally, the factors in § 3553(a) militate against releasing Mr. Autry. He has a lengthy and serious criminal record including drug distribution and theft. The Court must be mindful of protecting the public. In addition, releasing Mr. Autry after thirty-eight months in custody will create unwarranted disparities with his codefendants involved in the same conspiracy. Finally, releasing Mr. Autry now would be inadequate deterrence and would not promote adequate respect for the law. Hence, the Court finds the § 3553(a) factors are incompatible with granting Mr. Autry's motion.

### III.    Conclusion

Mr. Autry has provided insufficient evidence to support his claim that his dental concerns constitute extraordinary and compelling reasons for him to be released. Additionally, consideration of the § 3553(a) factors support denying the motion for release. If Mr. Autry does not receive the requested dental care, and he believes the prison is being deliberately indifferent to his serious medical needs, he has a remedy in a civil rights action. However, he has failed to show a claim for compassionate release and, therefore, his Motion to Reduce Sentence (ECF No. 37) is **DENIED**.

   IT IS SO ORDERED.

DATED: August 10, 2022

Hon. Cynthia Bashant
United States District Judge